## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

AMERICAN FEDERATION OF      *
GOVERNMENT EMPLOYEES, *et al.*,

     *

       Plaintiffs,

     *

   v.                              Civil Action No. 8:19-cv-02322-PX

     *

U.S. OFFICE OF SPECIAL COUNSEL,

     *

       Defendant.

        ***

### <u>MEMORANDUM OPINION</u>

This case concerns the constitutionality of an advisory opinion issued by the Office of Special Counsel ("OSC") pursuant to the Hatch Act. Pending before the Court is a Motion for a Preliminary Injunction filed by Plaintiffs American Federation of Government Employees ("AFGE") and American Federation of Government Employees Local 2578 (AFGE Local 2578"), ECF No. 20-1, and a Motion to Dismiss filed by Defendant OSC, ECF No. 29-1. The motions are fully briefed, and no hearing is necessary. Loc. R. 105.6. For the reasons that follow, the Court grants OSC's motion because the Court lacks jurisdiction to hear the claims and denies Plaintiffs' motion as moot.

### I.     Background

#### A.     The Hatch Act

The Hatch Act, 5 U.S.C. §§ 7321–7326 ("the Act"), restricts federal employees' political activities both while off-duty and on-duty to "promot[e] efficient, merit-based advancement, avoid[] the appearance of politically-driven justice, prevent[] the coercion of government workers to support political positions, and foreclos[e] use of the civil service to build political machines." *Burrus v. Vegliante*, 336 F.3d 82, 85–86 (2d Cir. 2003). Regarding off-duty

activities, the Act prohibits employees from using their official authority to influence an election, affecting the political activity of those subject to government authority, engaging in political fundraising, and running for partisan political office.  *See* 5 U.S.C. § 7323(a)(1)-(4).  When an employee is "on-duty," the Act prohibits engaging in "political activity" while in any room or building used by the federal government, wearing a government uniform or insignia, or using federal government property.  *Id.* § 7324.  "Political activity" under the Act is defined as "an activity directed toward the success or failure of a political party, candidate for partisan political office, or partisan political group."  5 C.F.R. § 734.101.  "Partisan," in turn, is defined as "related to a political party."  *Id.*

Although the Act prohibits "political activity" while on duty, the Act also makes clear that employees are otherwise free to participate in the "political process of the Nation."  5 U.S.C. § 7321.  The Act's implementing regulations illustrate, by way of examples, the contours of such prohibited versus permissible political activity.  *See* 5 C.F.R. §§ 734.302-734.307 (prohibited) and 734.202-734.208 (permitted).  The regulations state that a federal employee while on duty or in the federal workplace cannot engage in activity directed at the success or failure of a political party, such as attending political events while on duty, stuffing envelopes for a candidate while on duty, or displaying buttons, pictures, or signs at work.  *See* 5 U.S.C. § 7323(c); 5 C.F.R. §§ 734.101, 734.306.  Outside of these listed constraints, however, employees may express their political viewpoints or discuss matters of political import.  *See* 5 U.S.C. § 7321; 5 C.F.R. §§ 734.203-734.208

### B.     The Office of Special Counsel and the Merit Systems Protection Board

Defendant OSC is an independent agency charged by Congress with enforcing the Act. *See* Pub. L. No. 95-454, 92 Stat. 1111; 5 U.S.C. § 1211 *et seq.*  OSC receives and investigates

allegations of Hatch Act violations and may, at its discretion, issue warning letters or prosecute alleged violations before the Merit Systems Protection Board ("MSPB").  5 U.S.C. §§ 1212, 1214, 1215, 1216; ECF No. 24 ¶ 15.

If after investigation, OSC determines that an employee has violated the Act, OSC files a written complaint with the MSPB.  5 U.S.C. § 1215(a)(1).  In response, the employee is permitted to defend against the allegation before the MSPB and is afforded the right to representation and other procedural protections.  *Id.* § 1215(a)(2).  After notice and a hearing, the MSPB determines whether the employee has violated the Act and, if so, what if any disciplinary action may be imposed.  *Id.* § 1215(a)(3).  The MSPB decision constitutes a final order that is binding on the parties and appealable to the Federal Circuit.  *Id.* §§ 1215(a)(4), 7703(b)(1).

Within OSC, the Hatch Act Unit (HAU) assumes primary responsibility for carrying out the Office's duties under the Act.  ECF No. 29-2 (Galindo-Marrone Declaration) ¶ 2.  In each of the past three fiscal years, the HAU received well over 200 complaints, and in response has annually issued between 37 and 49 warning letters, obtained 10 or 11 corrective actions, and obtained between 4 and 6 disciplinary actions through either settlement or the MSPB.  ECF No. 29-2 ¶ 15.

OSC also issues advisory opinions in response to queries regarding compliance with the Act.  ECF No. 24 ¶ 17; ECF No. 29-2 ¶ 7.  The opinions are not binding on federal employees or the MSPB but may provide a "safe harbor" for employee conduct consistent with OSC advice.  *See* 5 U.S.C. § 1212(f); ECF No. 24 ¶ 17; ECF No. 29-2 ¶ 11–12.  Each year, OSC issues approximately 50 formal advisory opinions in letter form or published to the OSC website and 1300 informal advisory opinions through phone or email.  ECF No. 29-2 ¶ 7.

C.       **The Challenged OSC Advisory Opinion**

On November 27, 2018, and in response to a request from a federal employee, OSC

issued a formal advisory opinion addressing "three topics: (1) whether and when federal

employees may advocate for or against the impeachment of the President; (2) whether and when

federal employees may use the term "#Resist" or variations thereof; and (3) whether and when

federal employees may engage in strong criticism of an administration's policies and actions."

ECF No. 24 ¶ 18; *see also* ECF No. 20-2, Ex. A (the "Advisory Opinion"); ECF No. 29-2 ¶ 19.

OSC distributed the Advisory Opinion widely within the federal government.  ECF No. 24 ¶ 18;

ECF No. 29-2 ¶ 19.  On November 30, 2018, OSC issued a "clarification" of the Advisory

Opinion.  *See* ECF No. 20-2, Ex. B; ECF No. 24 ¶ 19; ECF No. 29-2 ¶ 20.[1]

The Advisory Opinion stated that in OSC's view, "advocating for or against

impeachment" of a candidate for federal office is considered political activity, ECF No. 24-2, Ex.

A.  However, the Advisory Opinion also noted that an employee's "merely discussing

impeachment, without advocating for or against its use against such a candidate," does not

constitute political activity.  ECF No. 24-2, Ex. B.  OSC provided the following examples as

guidance:

> [T]wo employees may discuss whether reported conduct by the president warrants
> impeachment and express an opinion about whether the president should be
> impeached without engaging in political activity. An employee may not, however,
> display in his or her office a poster that states "#Impeach45" or place a "Don't
> Impeach Trump" bumper sticker on a government-owned vehicle because such
> conduct advocates for or against impeachment of a candidate for federal office."

*Id.*

As to the term "Resistance," the Advisory Opinion stated that "[t]o the extent that the

---

[1] The Court reads the Advisory Opinion and Clarification together and refers to them collectively as "the Advisory Opinion."

statement relates to resistance to President Donald J. Trump, usage of the terms "resistance," "#resist," and derivatives thereof is political activity[,]" reasoning that the terms had gained prominence after the 2016 election and were "inextricably linked" with the electoral success or failure of the President. ECF No. 20-2, Ex. A. Although the Advisory Opinion specified that "the use or display of the hashtags #resist and #resistTrump, in isolation, is political activity[,]" the Advisory Opinion also made clear that such terms were permissible as long as they were *not* directed to the success or failure of a political party. *Id.* Again, the Advisory Opinion provided examples of when using such terms would not amount to a Hatch Act violation. *See* ECF No. 20-2, Ex. B ("using '#resist' in relation to an issue, such as '#ResistHate' or '#ResistKavanaugh,' is not political activity under the Hatch Act.").

Lastly, the OSC Advisory Opinion reasoned that "engagement" in political activities would be prohibited if "directed toward the success or failure of a political party." ECF No. 20-2, Ex. A. Although, in OSC's view, "no magic words" render a statement "political activity," OSC provided examples of prohibited and non-prohibited expression. ECF No. 20-2, Ex. A.

### D.   Plaintiffs' Claims

Plaintiff AFGE is a national labor organization and unincorporated association that represents over 600,000 federal civilian employees in agencies and departments across the federal government. ECF No. 24 ¶ 6. Plaintiff AFGE Local 2578 is a local branch of AFGE headquartered in College Park, Maryland, that represents over 300 federal civilian employees of the National Archives and Records Administration. *Id.* ¶ 7. Plaintiffs allege in their Amended Complaint that OSC's Advisory Opinion violates its members' First Amendment rights because the letter is "unconstitutionally overbroad" (Count I) and impermissibly discriminates on the bases of content and viewpoint (Count II). ECF No. 24. Plaintiffs further allege that the

Advisory Opinion "is vague and fails to afford fair notice of the conduct and speech that it prohibits," in violation of the First and Fifth Amendment (Count III).  *Id.*  Plaintiffs seek a judicial declaration that OSC's interpretation of the Act is unconstitutional.  Plaintiffs also urge the Court to enjoin OSC from enforcing or relying on the Advisory Opinion and command that OSC rescind the Advisory Opinion.  *Id.* ¶¶ 22–23, (a)-(e).

In support of the claims, Plaintiffs aver that union "Member 1" "wants to be able to express their opinion at work about whether the President should be impeached, but, because of the guidance from the OSC, has refrained from talking about impeachment at all while at work." *Id.* ¶ 48; ECF No. 20-2, Ex. C.  Likewise, "Member 2" "wants to be able to use iterations of the term "resist" or "resistance" at work, but, because of the guidance from the OSC, has refrained from using such terms."  ECF No. 24 ¶ 48; ECF No. 20-2, Ex. D.

OSC moves for dismissal on several grounds.  For the reasons stated below, the Court concludes that it lacks subject matter jurisdiction because the claims are not ripe for judicial determination.

## II.    Standard of Review

Defendant moves to dismiss the Complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  Whether the Court retains subject matter jurisdiction must be decided before reaching the merits of the case.  *Jones v. Am. Postal Workers Union*, 192 F.3d 417, 422 (4th Cir. 1999).  Motions brought pursuant to Rule 12(b)(1) challenge a court's authority to hear the matter.  *See Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300–01 (4th Cir.2009); *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). If "a claim fails to allege facts upon which the court may base jurisdiction," the court must dismiss the action for lack of subject matter jurisdiction.  *Davis*, 367 F. Supp. 2d at 799.

6

In determining whether jurisdiction exists, "the court may look beyond the pleadings and the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue." *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003) (quoting *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993)) (internal quotation marks omitted). The plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999).

The parties have submitted evidence that goes beyond the facts averred in the Complaint. On the question of subject matter jurisdiction, the Court considers such evidence.

### III.    Analysis

OSC contends that this Court lacks subject matter jurisdiction because the claims are not ripe. ECF No. 29-1 at 17. *See South Carolina v. United States*, 912 F.3d 720, 730 (4th Cir. 2019). "Ripeness" concerns the "appropriate timing of judicial intervention." *Cooksey v. Futrell*, 721 F.3d 226, 240 (4th Cir. 2013) (quotations omitted). The inquiry aims to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies" and to protect against "judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner,* 387 U.S. 136, 148–49 (1967). When reviewing First Amendment claims for ripeness, courts "relax" this inquiry so as "to protect against any inhibiting chill" of free speech. *See Cooksey*, 721 F.3d at 240 (quoting *New Mexicans for Bill Richardson v. Gonzales,* 64 F.3d 1495, 1500 (10th Cir.1995)). That said, First Amendment claims are not immunized from ripeness considerations. The Court should apply the same two-

pronged review to determine: "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Cooksey*, 721 F.3d at 240.[2]

This Court examines each factor separately.

### 1.    Fitness for Judicial Review

"A case is fit for judicial decision when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties." *Miller v. Brown*, 462 F.3d 312, 319 (4th Cir. 2006) (citation omitted). A controversy must be "presented in a 'clean-cut and concrete form'" before judicial intervention is warranted. *South Carolina*, 912 F.3d at 730.

As to First Amendment challenges leveled against an OSC Advisory Opinion, *American Federation of Government Employees, AFL–CIO v. O'Connor* provides important guidance. 747 F.2d 748 (D.C. Cir. 1984). There, as here, two federal employee unions filed suit challenging an OSC Advisory Opinion. *Id.* at 749–50. The plaintiffs sought OSC guidance regarding whether their members could lawfully conduct non-partisan voter registration drives at their worksites if no attempt was made to solicit registrants based on their political affiliation or candidate preference. *Id.* at 750–51. OSC, in response, issued an Advisory Opinion noting that although there were many factors to consider and OSC had not yet investigated the situation, the material available revealed that such voter registration drives were "in fact, partisan . . . [and therefore] prohibited political activity within the definition of the Hatch Act." *Id.* at 751–52. Plaintiff

---

[2] Plaintiffs argue that Defendant "ignores the applicable tests for determining ripeness and standing in the context of First Amendment pre-enforcement challenges" and asserts that the test articulated in *Kenny v. Wilson*, 885 F.3d 280, 288 (4th Cir. 2018) must be used to determine ripeness. ECF No. 31 at 10. The Court disagrees. *Kenny*, a case solely focused on standing, did not address the separate and independent question of whether the claims were ripe. Although ripeness and standing may at times compel similar considerations, they are nonetheless distinct preconditions for justiciability. *See Cooksey*, 721 F.3d at 234–41; *see also Renne v. Geary*, 501 U.S. 312, 320 (1991) (dismissing First Amendment challenge to speech restriction as unripe notwithstanding the plaintiffs' standing, stating that "[j]usticiability concerns not only the standing of litigants to assert particular claims, but also the appropriate timing of judicial intervention."). Thus, this Court follows *Cooksey* and its progeny.

unions filed suit, alleging similar First Amendment claims to those brought in this case.  *Id.* at 752.

The D.C. Circuit, reversing the district court, held that the court lacked subject matter jurisdiction because the claims were not ripe.  The Court first reasoned that the "character of the challenged administrative action"—an OSC Advisory Opinion—meant the claims, at best, were a challenge to OSC's "forecast" of what may occur in hypothetical scenarios.  *Id.* at 752–53.  The Court stressed that the OSC opinion did not bind MSPB, which was "free to disagree with the [OSC] and often does," and so did not constitute the final word on the meaning of a statute.  *Id.* at 752–54.

The Court next emphasized that the purpose of the OSC's issuing an advisory opinion was to "*alleviate* the Act's potential to chill the exercise of first amendment rights."  *Id.* at 754 (emphasis in original).  To reach plaintiffs' claims would undermine this very purpose.  *Id.*  Relatedly, the Court noted that adjudicating the matter would upend the "congressionally established scheme for deciding Hatch Act cases."  *Id.*  Congress envisioned presciently that the MSPB as the administrative forum of first resort in the adjudication of Hatch Act cases would, through its continual decisions, refine the law balancing individual liberties with the need to keep government employees free from political influence.  *Id.* at 755 (citing *United States Civil Service Commission v. National Association of Letter Carriers,* 413 U.S. 548, 574–75 (1973)).  MSPB, not OSC, remained the agency arbiter of Hatch Act violations.  To elevate an OSC advisory opinion to an actionable event, reviewable by the Court, would "strip the MSPB of the authority Congress allocated to" it and would "either short-circuit that scheme or introduce a most peculiar doubling of judicial effort."  *Id.*  at 754–55.  So as to avoid a result that risked

unnecessary judicial entanglement in this statutory scheme, the Court concluded that Plaintiffs'
claims were not fit for judicial review.  *Id.*

The Court next considered that the "sweeping generality" of the claims made them
difficult, if not impossible, to adjudicate.  *Id.* at 752.  The *O'Connor* plaintiffs had "tendered no
fact-particular case to or against the [OSC]."  *Id.* at 756.  Rather, the plaintiffs "solicited an
assurance that their registration activities, broadly and briefly described" would be permissible.
*Id.*  In this regard, the claims presented "none of the signposts of authoritative determination,
finality and ripeness that have pointed us in other cases toward judicial review."  *Id.* (citation and
quotation marks omitted).

*O'Connor* is precisely on point here.  Since *O'Connor*, little has changed about the
regulatory scheme governing OSC and MSPB.  OSC still issues hundreds of advisory opinions
per year to provide non-binding guidance regarding Hatch Act inquiries.  ECF No. 29-2 ¶ 7.
The MSPB is still free to disregard OSC guidance, and nothing suggests that OSC has
"metamorphosed from a counselor and constructor of safe harbors into a determined censor of
government employees' political activities."  *O'Connor*, 747 F.2d 748 at 754.

Moreover, this matter presents even less of a controversy capable of judicial review than
that presented in *O'Connor*.  Unlike *O'Connor*, OSC here has not been asked to opine on any
particular event involving plaintiff members.  Nor have Plaintiffs provided any specific
allegation as to how the Advisory Opinion interferes with their First Amendment rights.  At best,
two of Plaintiffs' members aver generally that they "wish to express an opinion" about important
political topics at work.  *See* ECF No. 20-2, Ex. C ¶ 4 (affiant stating that he "wish[es] to express
his opinion at work on whether the President should be impeached" and without the "intent . . .
to advocate for or against Donald Trump as a candidate for future election") *and* ECF No. 20-2,

Ex. D ¶ 3 (affiant stating that she "wish[es] to use 'resist,' 'resistance,' and iterations of those terms while at work to express [her] views and opinions on topics of public importance " without the "intent . . . to advocate for or against Donald Trump as a candidate for future election"). But the broad allegations of wishing to express an opinion do not even run contrary to the challenged OSC guidance.  *Compare* ECF No. 20-2, Ex. C ¶ 4 *and* ECF No. 20-2, Ex. D ¶ 3 *with* ECF No. 20-2, Ex B (OSC noting that "employees may . . . express an opinion [in the workplace] about whether the president should be impeached without engaging in political activity," and that "using '#resist' in relation to an issue . . . is not political activity under the Hatch Act").  As in *O'Connor*, Plaintiffs' claims do not articulate a sufficiently clear and definite matter requiring judicial intervention.  *Cf. South Carolina*, 912 F.3d at 730; *see also Ostergren v. Cuccinelli*, 615 F.3d 263, 288 (4th Cir. 2010) (claim not ripe where "no evidence, no argument, and no underlying dispute for the thorny constitutional question . . . [was] raised"); *United Pub. Workers of Am. (C.I.O.) v. Mitchell*, 330 U.S. 75, 89 (1947) ("adjudication of constitutional issues" requires "concrete legal issues, presented in actual cases," not "abstractions" or a "general threat of possible interference with [First Amendment] rights.") (citation and quotation marks omitted).   Thus, the claims are not fit for judicial review.

Plaintiffs, in response, contend that developments in First Amendment jurisprudence since *O'Connor* make it "incompatible" with this case.  ECF No. 31 at 9.  However, none of the proffered authority changes the import of *O'Connor*.  The cases on which Plaintiffs rely involve *binding* statutes or regulations, the application of which result in a clear, definite, and concrete constitutional infringement.  *See Kenny v. Wilson*, 885 F.3d 280 (4th Cir. 2018) (challenge to the constitutionality of a state disorderly conduct ordinance on behalf of minor plaintiffs); *Virginia v. American Booksellers Association, Inc.*, 484 U.S. 383 (1988) (challenge to a Virginia criminal

11

statute limiting commercial display of sexually explicit material); *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) (challenge to Ohio statute criminalizing false statements about candidates during political campaigns); *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010) (challenge to a federal statute that criminally banned material support to certain organizations); *Kiser v. Reitz*, 765 F.3d 601 (6th Cir. 2014) (challenge to State dental board's regulations); *Frudden v. Pilling*, 742 F.3d 1199 (9th Cir. 2014) (challenge to school's mandatory uniform code). Here by contrast, the Advisory Opinion carries no similar force and effect.

Moreover, the challenged actions resulted in concrete and imminent injury unlike that pleaded here. *See, e.g., Kiser*, 765 F.3d at 608 (challenged regulation threatened against plaintiff in past); *Frudden*, 742 F.3d at 1202 (Plaintiff children asked to change clothes due to mandatory school policy and complying with such direction); *see also Allen, Allen, Allen & Allen v. Williams*, 254 F. Supp. 2d 614, 634–626 (E.D. Va. 2003) (although State Bar opinion not binding, opinion specifically tailored to plaintiffs' actions and Bar threatened specific enforcement). Accordingly, this Court is unconvinced that the rationale of *O'Connor* is no longer viable. Thus, the Court will join at least two others in adopting *O'Connor's* reasoning. *See Newcomb v. OSC*, No. 10CV1923, 2010 WL 4055572 (S.D. Cal. Oct. 15, 2010) ("*Newcomb I*"); *Newcomb v. OSC*, No. 11-cv-2431-H, 2012 WL 12906359 (S.D. Cal. Jan. 23, 2012) ("*Newcomb II*"), *dismissed*, 550 F. App'x 532 (9th Cir. 2013). As in *O'Connor*, Plaintiffs' claims are not "fit" for judicial review.

### 2.      Hardship to the Parties

The Court next turns to whether declining to reach the claims pose hardship to the parties. As for OSC, the Court concludes that declining to reach the claims would preserve OSC's role in the Hatch Act enforcement process. Adjudicating the constitutionality of an OSC Advisory

Opinion here would expose similar OSC guidance to future judicial challenge.  OSC, in turn, would be spend its precious resources in litigation at the expense of fulfilling its Congressionally mandated role as advisor and safe harbor.  *Compare* ECF No. 29-2 ¶ 7 (six attorneys provide Hatch Act guidance in response to over 1000 inquiries per year) *with O'Connor*, 747 F.2d at 754 ("If every such opinion that displeased the party requesting it could be attacked in court, [OSC] might hesitate to devote the limited resources of [its] office to this work.").  Thus, as in *O'Connor*, the Court must decline adjudication to avoid such unnecessary entanglement with this carefully crafted statutory scheme.  *O'Connor,* 747 F.2d 748 at 754–55.

Plaintiffs, on the other hand demonstrate no real hardship were the Court to decline intervention.  Plaintiffs aver simply that their members' speech is "chilled" if the Advisory Opinion is allowed to stand, but provide little reason as to why.  They concede the Advisory Opinion is non-binding, without threat of OSC's future enforcement, and no related MSPB decision on the horizon.  *Cf. Kenny*, 885 F.3d at 289 (finding credible threat of enforcement of state statute in part because plaintiffs had been prosecuted by the laws in the past).  Nor can they articulate any specific scenario where their desired "speech" contradicts OSC guidance.  *Cf. Allen, Allen, Allen & Allen*, 254 F. Supp. 2d at 625–26 (noting that the effects of challenged opinions had "been felt in a concrete way by the plaintiffs" including by plaintiffs having to pull advertisements due to defendant's targeted and threated disciplinary action).  Accordingly, the Court must conclude that Plaintiffs will suffer no real hardship if this Court declines to adjudicate their claims.

## IV.      Conclusion

In sum, following *O'Connor*, the Court finds that Plaintiffs have failed both to aver claims fit for judicial review and to convince this Court that the balance of hardships weighs in

their favor.  Because Plaintiffs' claims are not ripe, this Court lacks jurisdiction to hear them.

Finally, because the Court concludes that it lacks subject matter jurisdiction over the claims, it

declines to reach Defendant's remaining arguments regarding the insufficiency of Plaintiffs'

claims.

Defendant's motion to dismiss (ECF No. 29-1) is granted pursuant to Rule 12(b)(1), and

Plaintiffs' motion for preliminary injunction (ECF No. 20-1) is denied as moot.   A separate

Order follows.


_____8/3/2020_____                    _____/S/_____
Date                                         Paula Xinis
                                             United States District Judge